# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

LORA HECKATHORN,             )

                                    )

        Plaintiff,               )

                                    )

              vs.             )          3:15CV310-PPS

                                    )

CAROLYN W. COLVIN,        )

Acting Commissioner of Social Security,   )

                                    )

        Defendant.         )

## OPINION AND ORDER

Lora Heckathorn appeals the Social Security Administration's denial by an Administrative Law Judge of her application for disability insurance benefits. [DE 9 at 22-32.] Judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

At step three of the familiar sequential evaluation process, the ALJ found that three "severe impairments" were established: degenerative disc disease, hypothyroidism, and hypercholesterolemia. [DE 9 at 24.] At the next step, the ALJ determined that Heckathorn's impairments do not meet or medically equal the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id*. at 26.]

Ultimately, the ALJ concluded that, despite her impairments, Heckathorn retained the

residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds

frequently, to stand, sit or walk (each) for 6 hours in an 8-hour workday with normal

breaks, but never to climb ladders, ropes, or scaffolds or work at unprotected heights.

[*Id*. at 26-27.] These findings supported the ultimate determination that Heckathorn is

not disabled because she remains capable of performing her past relevant work as a

cashier. [*Id*. at 31.]

Heckathorn's single challenge to the Commissioner's decision is her claim that

the ALJ improperly discredited the opinion of her treating physician. A treating

physician's opinion is entitled to controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v.*

*Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Once well-supported contradicting evidence

is introduced, however, the treating physician's opinion is no longer entitled to

controlling weight and becomes just one more piece of evidence for the ALJ to weigh.

*Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). If an ALJ decides not to give

controlling weight to a treating physician's opinion, however, he must explain his

reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is

cause for remand. *Id*.

The opinion to which Heckathorn's argument refers is a Medical Source Statement of Ability to Do Work-Related Activities (Physical) — a Social Security Administration form. [DE 9 at 749-754.] The end of the form contains a signature blank for the reporting physician, and a blank in which the doctor's name, title and medical specialty are to be printed. [*Id*. at 754.] No signature appears on Heckathorn's form, but a stamp has been applied across both blanks that reads "Cass County Community Health Center" with an address, phone and fax numbers, supplemented by a handwritten notation: "Family Practice." [*Id*.] The ALJ's discussion of this treating opinion is brief:

> The claimant has also considered the opinion of the claimant's family practitioner dated December 20, 2013 (Ex.23F). Overall, little weight can be given to this opinion because there is no indication as to who provided it since it does not indicate the physician's name and it is unsigned. Even if these errors were corrected, the opinion is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques. Further, it is inconsistent with other substantial medical evidence of record. Once again, the medical expert's opinion is more consistent with the record as a whole as he had the opportunity to review the medical evidence in its entirety.

[DE 9. at 30-31.]

The first problem with the ALJ's approach is his reliance on the fact that the medical opinion of the treating physician lacked a signature. It is true that a consultative examination report must be signed by the provider under the relevant SSA regulations:

> All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions,

3

explanations or comments provided with respect to the history, examination and evaluation of laboratory test results.  The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable.  A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable.

20 C.F.R. §416.919n(e). Cases and applicable regulations support the proposition that the Commissioner cannot deny benefits by relying on an unsigned medical opinion of a physician who has rendered the opinion at the request of the agency.  *Terry v. Astrue*, 580 F.3d 471, 476-77 (7th Cir. 2009); 20 C.F.R. §404.1519*o*.  But these authorities do not speak directly to the opposite scenario presented here, namely the *rejection of* (rather than reliance on) an opinion obtained *by the claimant* (as opposed to the agency) for lack of a signature.

Nonetheless, there is intuitive legitimacy to a concern that an unsigned opinion, which cannot be attributed to an identifiable doctor, may not be authored by a physician at all, and may not constitute an "acceptable medical source" under the Social Security regulations.  *Terry*, 580 at 476; 20 C.F.R. §404.1513.  With any concern about the legitimacy or attribution of the Cass County report, however, the Commissioner could have made an inquiry to confirm that a doctor had completed the Statement and to obtain his or her signature if it was deemed necessary.  The regulations indicate that it is the Commissioner's responsibility to "carefully consider medical source opinions about any issue" and "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for

4

such opinions are not clear to us." Social Security Ruling 96-5p, 1996 WL 374183 at 2

(July 2, 1996). *See also* 20 C.F.R. §404.1512(d) ("We will make every reasonable effort to

help you get medical reports from your own medical sources..."). The CCCHC Medical

Source Statement contained opinions about Heckathorn's residual functional capacity

(an issue reserved for the Commissioner), and the Commissioner was obligated to

recontact the source for clarification in the form of identifying the physician if the lack

of signature was a stumbling block for the opinion's consideration.

In addition, the name "Gutierrez" is handwritten at the top of the Medical Source

Statement, Exhibit No. B23F within the administrative record. [DE 9 at 749.] The

document immediately prior to the Statement, Exhibit B22F, is a radiology report from

the Logansport Memorial Hospital, which reflects that the ordering physician and

Heckathorn's attending doctor was Rene Gutierrez of Cass County Community Health

Center. [DE 9 at 747.] This minimal review of the claimant-submitted evidence appears

to yield an explanation, if not complete confirmation, concerning the Medical Source

Statement as a treating physician's report. So I am not persuaded that the lack of a

signature provided a defensible basis for disregarding the opinion expressed in the

Statement, when the Commissioner apparently made no effort to address the signature

issue with the claimant or directly with the medical source.

Heckathorn invokes the principle of deference afforded a treating physician. The

Cass County Community Health Center assessment is contrary to the ALJ's conclusions

in that it indicates Heckathorn can lift and carry up to 10 pounds only occasionally, not

frequently, and never more than 10 pounds, and also states that Heckathorn can sit, stand and walk only an hour at one time, and not more than 3 or 4 hours in an 8-hour workday. This would limit Heckathorn to sedentary work rather than light work, as the ALJ found her capable of. The handwritten explanation offered for these conclusions is that Heckathorn "has extensive hypertrophic lumbar disease & moderate L4-5 & L5-S1 disc space thinning." [DE 9 at 750.] Without specifically addressing these determinations in any detail, the ALJ rejected the CCCHC assessment with boilerplate language, including that the Cass County report overall was "not well supported by medically acceptable clinical findings and laboratory diagnostic techniques." [DE 9 at 30.]

The Statement's handwritten explanation of the findings supporting its assessments includes this parenthetical: "(see attached sheet)." The radiology report from November 11, 2013 – the report previously mentioned of tests ordered by Dr. Gutierrez of CCCHC -- contains findings of "mild to moderate disc space thinning at L5-S1 and L4-5" as well as "considerable reactive hypertrophic arthritic change...between L4 and L5." [DE 9 at 747.]. [*Id*.] Those radiology results are cited to support the findings and opinions in the Statement, suggesting that, contrary to the ALJ's conclusory statement, the opinions *are* well supported by medical testing and clinical findings.

The ALJ went on to summarily state that the CCCHC opinion was inconsistent with other substantial medical evidence of record, and that the agency's medical

expert's opinion is more consistent with the record as a whole "as he had the opportunity to review the medical evidence in its entirety." [DE 9 at 30-31.] That the agency expert reviews the entire administrative record could be said about every agency medical expert, which in my view detracts from its persuasive value.

The remainder of the explanation for the rejection of the opinion is merely the converse of the regulatory standard for giving a treating physician's opinion controlling weight, where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. §404.1527(c)(2). The ALJ's generic language, without any discussion or detail about the rejected opinion, its clinical support and how it is inconsistent with particular pieces of the medical record, is not sufficient to satisfy the regulatory requirement that the Commissioner "give good reasons in [the] notice of determination or decision" for the weight given to the treating source's opinion. *Id. See also Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014) (remanding where the ALJ's opinion did not address all the relevant factors in determining how much weight to give to the treating physician's opinion); *Eakin v. Astrue*, 432 Fed.Appx. 607, 612 (7th Cir. 2011) (good reasons explaining the weight given to a treater's opinion must be sufficiently specific).

Adding to my concern about the basis for the ALJ's rejection of the treating physician's opinion is his rejection of the agency's two consultative examiners' opinions *for the same boilerplate reasons*, even though those doctors' residual functional capacity determinations were in one instance virtually the same as the ALJ's and in the other that

Heckathorn's abilities were slightly *less* limited than the ALJ found. Like the ALJ, consultative examiner Dr. William Terpstra found that Heckathorn could "stand/walk for most if not all of an 8-hour day" and could lift or carry 10 pounds frequently and over 10 pounds occasionally. [DE 9 at 29.] Nonetheless, the ALJ concludes that little weight can be given to this opinion (with which the ALJ's own determination ultimately agrees) for the same reasons given for the rejection of the CCCHC report: "it is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques," "it is inconsistent with other substantial medical evidence of record" and "the medical expert's opinion is more consistent with the record as a whole...." [*Id.* at 30.] Rejection of an opinion that is the same as the ALJ's own suggests confusion at best and, at worst, a failure to apply meaningful standards.

The same language was employed to reject the opinion of the other consultative examiner, Dr. Gregory French, whose conclusions were slightly less favorable to the claimant than even the ALJ's. Dr. French's RFC opinion (reflected in the same kind of SSA Medical Source Statement form as the CCCHC treating physician report) was that Heckathorn could lift or carry 10 pounds continuously and more than 10 pounds frequently, and could sit or stand for an entire 8-hour workday. [DE 9 at 734-35.] This RFC determination is not actually detailed in the ALJ's decision, but the ALJ reportedly considered it and concluded that little weight could be given to it for the same reasons as the CCCHC report and Dr. Terpstra's opinion. The rote usage of the same explanation for the rejection of three doctors' opinions undermines my confidence in

8

the adequacy of the ALJ's analysis, particularly when one of the opinions was actually in synch with the ALJ's own determination.

As I mentioned above, an ALJ's failure to explain why he is discounting a treating physician's opinion is cause for remand. *Scott*, 647 F.3d at 740. An ALJ must build a logical bridge from the evidence to his conclusion. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). In the absence of a meaningful explanation of his reasons for discounting the treating physician's opinion, I can't affirm the decision. *See Scott*, 647 F.3d at 740. Maybe the provenance of the CCCHC report cannot be adequately confirmed, or its conclusions will not ultimately change the final outcome here, but the ALJ must at least explain why that's the case.

**ACCORDINGLY:**

For the foregoing reasons, pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: July 11, 2016

         /s/ Philip P. Simon
         **PHILIP P. SIMON, CHIEF JUDGE**
         **UNITED STATES DISTRICT COURT**